CLEVELAND SCHULTZ, Sr., and JUDD C. PORTER, Appellants, *v.* HERBERT S. KING, Doing Business as KING'S HUNTRIDGE DECORATING COMPANY, Respondent.

No. 3542

March 7, 1951.                    228 P.2d 401.

*Cleveland Schultz, Jr.,* of Las Vegas, for Appellants.

*William P. Compton,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, C.J.:

The district court, after sustaining defendants' demurrer to plaintiff's lien foreclosure complaint and giving plaintiff 10 days to amend, signed and filed a judgment of dismissal after plaintiff had failed to amend within the time allowed. Thereafter, on motion of plaintiff, the court set aside the judgment of dismissal and granted plaintiff 10 days to file an amended complaint. This appeal is from such order.

Appellants assign four errors. The assignments are overlapping and we restate them as follows: (1) That the order complained of was an abuse of the trial court's discretion; (2) that the trial court was not even called upon to exercise its discretion because of respondent's failure to show that he had a meritorious cause of action; (3) that the same situation existed in the absence of a showing that a different judgment would probably be reached if plaintiff were given an opportunity to present his case on the merits; and (4) that the judgment theretofore obtained by appellants became a property right owned by them and that the dismissal of such judgment deprived them of such property without due process of law.

(1) The liberality of courts in setting aside defaults and permitting cases to be tried on their merits and the reluctance of appellate courts to interfere with the exercise of the trial court's discretion in thus acting, in the absence of a clear abuse thereof, have been so often recognized by this and all other courts as to require no citation of authority. That there was no such abuse of discretion in the instant case would appear from the facts presented to the district court. The basis for the order appealed from was plaintiff's affidavit, which referred to his lien foreclosure complaint filed in his behalf by the attorney then acting for him (he is represented by different counsel in resisting this appeal) on January 19, 1948, and which then proceeds to show the following facts. Defendants filed their demurrer to such complaint January 30, 1948. On February 13, 1948 plaintiff was summoned to his attorney's office and was advised by his attorney that the latter would withdraw from the case unless plaintiff paid a cash retainer of $750 by noon of that day. The plaintiff remonstrated with him and reminded him of his agreement to handle the matter on a contingent fee basis, whereupon his attorney informed him that he would "take care of the demurrer." On February 17, 1948 the plaintiff left

Nevada for California to obtain employment and to obtain medical treatment for his wife who was suffering from heart disease. On February 23, 1948 plaintiff wrote his attorney requesting information as to the status of the matter, and on March 4, 1948 received a reply advising that his attorney had withdrawn from the action and no longer represented plaintiff as his attorney. On February 26, 1948, without the knowledge of plaintiff, the demurrer came on for hearing without plaintiff's presence or the presence of anyone representing him, and the demurrer was on said date sustained, with leave to amend within 10 days, and plaintiff's attorney was on the same day served with notice of such order, but plaintiff was not advised thereof till March 19, 1948. On March 11, 1948, likewise without plaintiff's knowledge, the district judge had entered a judgment of dismissal for plaintiff's failure to amend within the time required. A counter affidavit filed by defendant Schultz alleged that by reason of his filing, as owner, of a certain notice of completion on part of the property and because plaintiff's lien was prematurely filed as to the remainder of the property, the purported lien foreclosure action would not lie under the terms of our statute. This raised certain questions of law which we shall treat later. The counter affidavit did not negative any of the matters of fact contained in plaintiff's affidavit. Under the combination of circumstances recited— the evident misunderstanding between plaintiff and his attorney, plaintiff's departure for California, the necessity that he find work there, the illness of his wife, his verified lien claim and verified complaint alleging his performance of labor and furnishing of materials and the failure of compensation therefor, his lack of knowledge that the demurrer to his complaint had been submitted in the absence of his attorney, that it had been sustained, that the time for him to amend had actually expired and that a judgment of dismissal had been entered by default, and his desire in good faith to

prosecute his action—it cannot be said that there was an abuse of discretion in the order complained of. We are compelled to hold that this assignment of error is without merit.

(2) Appellants' second and third assignments of error may be considered together. They arise out of the contention that no meritorious cause of action was shown by plaintiff as substantiating the court's order, and they refer to the prior order sustaining the general demurrer to the complaint. The record is bare of any indication as to the reason why the court found the complaint defective in stating a cause of action, and the granting of leave to amend is at least some indication that in the opinion of the trial court the complaint could be amended to state a cause of action. Appellants cite many cases holding a showing of a meritorious *defense* as necessary for an order setting aside a *defendant's* default, and we may assume by an analogy of reasoning that a showing of a meritorious cause of action is essential to an order setting aside a *plaintiff's* default, and, for sake of argument, that appellants are correct in their contention for the necessity of showing that a different judgment would probably be reached if respondent were permitted to go to trial on the merits if he could support the allegations of his verified complaint by proof. These various contentions deal particularly with appellants' assertion that as to two lots on which the labor was performed the lien claim was filed late and that as to the other two lots the filing was premature. A determination of these questions requires an examination of the requirements of the statute.

It is contended that upon the face of the record plaintiff cannot obtain a lien foreclosure judgment under the provisions of our statute. The statute in question, as last amended, is N.C.L., sec. 3739, 1943–1949 Supp., and reads in part as follows:

"Every person claiming the benefit of this chapter shall, not earlier than ten days after the completion of

his contract, or the delivery of material by him, or the performance of his labor, as the case may be, and in each case not later than thirty days after the completion of the contract and the recording of the completion notice by the owner as hereinafter provided, and in all other cases ninety days after the completion of the contract, or the delivery of material, or the performance of his labor as the case may be, file for record with the county recorder of the county where the property or some part thereof is situated, a claim containing a statement of his demand * * *

"In all cases, any of the following shall be deemed equivalent to a completion for all the purposes of this act; the occupation or use of a building, improvement or structure by the owner, or his representative, accompanied by cessation from labor thereon; or the acceptance by the owner, or said agent of said building, improvement or structure, or cessation from labor for thirty days upon any contract or upon any building, improvement or structure, or the alteration, addition to, or repair thereof; the filing of the notice hereinafter provided for.

"The owner may within ten days after the completion of any contract or work of improvement provided for in this act, or within ten days after there has been a cessation from labor thereon for a period of thirty days, file for record in the office of the county recorder of the county where the property is situated a notice setting forth the date when the same was completed, or on which cessation from labor occurred * * *. In case such notice be not so filed, then all persons claiming the benefit of this act, shall have ninety days after the completion of said work of improvement within which to file their claims of lien. The phrase 'work of improvement' and the word 'improvement' as used in this act are each hereby defined to mean the entire structure or scheme of improvement as a whole."

It appears from the complaint that the plaintiff, on July 10, 1947, entered into a written contract with

appellant Porter, the main contractor, for the furnishing of labor and material for the painting job on the property known as "The Doris Homes" comprising four lots, on lots 13, 14, 15 and 16, of Block 10, Fairview Tract, at Las Vegas, Nevada. The painting was specifically described and the amount and terms of payment set forth, with other usual provisions as to the nature of the performance and containing the notation "Total value of this contract is: $155.00 times 16 units: $2,480.00." A memorandum attached listed the numbers of windows, doors, walls, ceilings, etc., and the numbers of coats of paint to be applied to the different items. For outside work is listed, among others, the item "33 windows." There were also nine doors and four "porch overhangs." We mention these items as at least indicating that such work was not restricted to a single one of the units but embraced all of them, probably, though not necessarily, within the statutory contemplation of "the entire * * * scheme of improvement as a whole."

The affidavit of appellant Schultz is to the effect that he filed a notice of completion on lots 15 and 16 on October 16, 1947, more than 30 days prior to the filing of plaintiff's lien claim (November 25, 1947), and appellants insist that this conclusively shows that plaintiff is barred by the terms of the statute from recovering a judgment for a lien foreclosure as to these two lots. So far as is indicated by the record, we are unable to say that this is so. The lien created by sec. 3735, N.C.L. 1929, is a lien upon the "building or other superstructure" upon which the work is done, which lien under the provisions of sec. 3737, N.C.L., extends to "a convenient space about the same, or so much as may be required for the convenient use and occupation thereof." Under sec. 3740, N.C.L., where one claim is filed against two or more buildings owned by the same person, the claimant is required to designate the amount due him on each of such buildings, but the only penalty recited in the statute

for failure to make such designation is the postponement of his lien to other liens and the possible postponement of his claim to the claims of other creditors having liens by judgment or otherwise upon the buildings, improvements or land involved. The importance of the last sentence hereinabove quoted as a part of sec. 3739 to the effect that "improvement" as used in the act is defined to mean the entire structure or scheme of improvement as a whole becomes manifest. We cannot in this proceeding make any determination as to the applicability of these provisions to the facts of the case. Such determination must be made primarily by the trial court. We are able to conclude, however, that from the record before us it does not affirmatively appear that the filing of the notice of completion as to lots 15 and 16 necessarily started the 30-day period running for the filing of plaintiff's lien claim on the entire job. The verified complaint alleges the completion of labor by the plaintiff and the occupation "of the said apartment dwelling units" on November 14, 1947 and the filing of the lien on November 25, 1947. This would appear on its face to show a compliance with the requirements of sec. 3739, unless after a trial of the issues of law and fact raised by the completed pleadings of the parties, the situation is changed by the filing of the notice of completion as to the improvements on lots 15 and 16, as mentioned above. It may also be noted, in passing, that while appellants allege the filing of completion notice on November 25, 1947, they do not allege that such notice stated the date of the completion of the work, an express requirement of the statute.

Appellants also contend that as to the improvements on lots 13 and 14, the filing of the lien claim was premature, because as to these lots plaintiff filed notice of completion November 25, 1947, the same date as the filing of the plaintiff's lien, whereas it is asserted that the statute provides that the claim shall be filed "not

earlier than ten days after the completion of his contract, or the delivery of material by him, or the performance of his labor, as the case may be," and that the statute makes the filing of a notice of completion equivalent to completion. Under the statute, when ten days have elapsed after the completion of the contract or the delivery of the material or the performance of the labor, the claim of lien may be filed. Plaintiff alleges that he completed his contract, and that the owner took possession, on November 14, 1947, and that plaintiff filed his lien November 25, 1947, thus satisfying the statutory lapse of ten days. The defendant owner contends that, per his notice of completion, the work was completed on lots 13 and 14 on November 25, 1947, and the filing of the lien claim was therefore premature. Here again we have an issue of fact that cannot be determined on this appeal. There was, as we have seen, but one contract for plaintiff's entire paint job on the entire group of units on four contiguous lots. This fact would, as a general rule, permit plaintiff's lien to attach to the entire group, 57 C.J.S., mechanics' liens, sec. 189c, p. 741, although questions of severability might result in an exception to or modification of such rule. Golden Belt Lumber Co. v. McLean, 138 Kan. 351, 26 P.2d 274.

Accordingly, appellants' assignments of error numbers 2 and 3, based on the contention that respondent's lien was late as to lots 15 and 16 and premature as to lots 13 and 14, by reason of the filing of the respective completion notices, and that respondent had therefore failed to show a meritorious cause of action, must be held to be without merit so far as the order appealed from is concerned, even though the complexion of the matter may be altered at a trial of issues raised by further pleadings. Esden v. May, 36 Nev. 611, 135 P. 1185; Stretch v. Montezuma Min. Co., 29 Nev. 163, 86 P. 445; and Nevada Consol. Min. & Mill Co. v. Lewis, 34 Nev. 500, 126 P, 105, relied on by appellants, do not in our opinion preclude this conclusion.

(3) Nor is there any merit to the assignment that by the court's order appellants were deprived of their property without due process of law. Assuming, arguendo, that the original judgment relieving the property from the claim of lien was a property right, there is still no showing of absence of due process. Under sec. 8640(e), N.C.L.1931–1941 Supp., the court was vested with jurisdiction to relieve the plaintiff from his default in not filing his amended complaint by reason of his mistake, inadvertence, surprise or excusable neglect. The court's action was taken as the result of plaintiff's motion, notice of which had been served in accordance with statute and rule of court based upon the affidavits and counter affidavits of the parties and after argument and submission by their respective counsel.

The order appealed from is hereby affirmed, with costs.

EATHER, J., concurs.

HORSEY, formerly Chief Justice, did not participate, his term of office having heretofore expired.

MERRILL, J., having become a member of the court after said matter was argued and submitted, did not participate.